Willie BARRON, Jr., Plaintiff,

v.

Marvin T. RUNYON, Defendant.

No. CIV. A. 98–100–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

July 7, 1998.

Declan C. Leonard, Martin, Arif & Petrovich, Burke, VA, for Plaintiff.

Helen F. Fahey, U.S. Atty., Richard Parker, Asst. U.S. Atty., Alexandria, VA, Roderick Eves, U.S. Postal Service, Mid–Atlantic Law Office, Washington, DC, for Defendant.

## MEMORANDUM OPINION

ELLIS, District Judge.

This Family Medical Leave Act ("FMLA" or "the Act")[1] action presents two issues of statutory interpretation not yet resolved in this circuit. The first issue requires determination of the FMLA's effective date in circumstances in which an employer voluntarily adopted the terms of the Act as part of its internal policies prior to the effective date specified in the statute. The second, and central, issue is whether an employee who takes intermittent leave under the Act for a valid medical reason must qualify as an "eligible employee" each time he is absent from work for that reason, or whether his eligibility must be established only the first time he is absent for that reason. Apart from these statutory questions, there is also presented the question whether the existing summary judgment record supports plaintiff's allegation that there was a causal connection between his termination and his use of FMLA-protected leave.

### I

Plaintiff was employed as a processing clerk for the U.S. Postal Service in Merrifield, Virginia, where he was a member of the American Postal Workers Union ("APWU"). Plaintiff worked 1,394 hours in the Postal Service's 1993 leave year[2] and 1,192 hours in the 1994 leave year. In the twelve months immediately preceding February 25, 1994, plaintiff worked a total of 1,244 hours. There is no twelve-month period ending after that date during which he worked at least 1,250 hours.[3]

Labor relations between the Postal Service and the APWU were governed by a collective bargaining agreement ("CBA") that was in effect from June 12, 1991, until November 20, 1994. Pursuant to the terms of the CBA, on November 9, 1993, plaintiff was issued a Notice of Removal for "unsatisfactory attendance/repeated failure to maintain regular schedule/AWOL." Thereafter, on December 23, 1993, plaintiff and the Postal Service entered into a Last Chance/Firm Choice Agreement, under which plaintiff's Notice of Removal would be held in abeyance for one year provided certain conditions were met. Specifically, plaintiff agreed to enroll in a structured Employee Assistance Program and to maintain satisfactory attendance at work. Under this Agreement, whether plaintiff's attendance was satisfactory was committed to the discretion of his immediate supervisor, Karen Robinson. Moreover, the Agreement provided that "any unscheduled absences may result in the issuance of a Notice of Removal."

According to Robinson, plaintiff's attendance over the next year was not satisfactory, and so on December 20, 1994, plaintiff was issued a second Notice of Removal for "unsatisfactory attendance/repeated failure to maintain regular schedule/AWOL/violation of settlement agreement," and he was terminated. This second notice listed the following fourteen periods over the one-year duration of the Agreement in which plaintiff's attendance was allegedly unsatisfactory:

| | |
|---|---|
| December 30, 1993–<br>January 7, 1994 | 56 hours |

### Unscheduled LWOP

---

1. The FMLA is codified at 29 U.S.C. §§ 2601–2654.

2. It appears from the existing record that, at times relevant here, the Postal Service's leave year began and ended in the last week of December.

3. As becomes evident below, this information is relevant because the FMLA requires that an employee work at least 1,250 hours in the twelve months preceding the leave to be eligible for protected leave under the Act.

| | | |
|---|---|---|
| January 27, 1994–February 4, 1994 | 56 hours | AWOL |
| February 19, 1994–March 3, 1994 | 268 hours | AWOL |
| May 5, 1994 | 8 hours | Emergency AL |
| May 19, 1994 | 8 hours | Unscheduled SL |
| June 4, 1994 | 8 hours | Unscheduled SL |
| June 16–18, 1994 | 24 hours | Unscheduled SL |
| July 17, 1994 | 8 hours | Emergency AL |
| August 6–10, 1994 | 24 hours | AWOL |
| September 8–9, 1994 | 16 hours | Unscheduled SL |
| October 13–17, 1994 | 40 hours | Emergency AL |
| November 7–10, 1994 | 16 hours | AWOL |
| November 17, 1994 | 8 hours | AWOL· |
| December 16, 1994 | 29 minutes | late |

Based on these fourteen absences, Robinson concluded that plaintiff should be terminated. Furthermore, Robinson states in her declaration that her decision to terminate plaintiff would have been the same even if "any one of the cited incidents of absence or tardiness set forth in the December 20, 1994 letter were [sic] not considered." ·

Plaintiff does not dispute that he was absent from work on these occasions; instead, he objects to the characterization of the absences as unauthorized or unscheduled. Plaintiff contends that his absences on these occasions were authorized FMLA absences taken after giving proper notice to his employer so that he could care for his wife, who had suffered a back injury.

## II

In this action, plaintiff alleges that defendant unlawfully discharged him because of absences that were protected under the FMLA. Defendant now moves for dismissal, or in the alternative for summary judgment, contending that thirteen of plaintiff's fourteen absences were not protected by the FMLA and thus that the termination was lawfully based on plaintiff's unauthorized absences. To the extent defendant's motion relies on declarations and otherwise refers to statements and documents beyond the complaint, it is properly treated as one for summary judgment. *See* Rule 12(b), Fed. R.Civ.P.

### A. *Effective Date of the FMLA*

■ The threshold dispute concerns the effective date of the FMLA. This is so be-cause only absences that occurred subsequent to the Act's effective date can serve as a basis for plaintiff's FMLA claim.

The starting point in resolving this dispute must, of course, be the Act itself, which provides that in the general case, the effective date is "6 months after the date of the enactment of th[e] Act." 29 U.S.C. § 2601, Statutory and Historical Notes Section; *accord* 29 C.F.R. § 825.102. But if, on this date, a collective bargaining agreement ("CBA") was in effect, a different rule obtains: in this event, the Act's effective date is the CBA's termination date or twelve months after the enactment date, whichever first occurs. *See id.*

Because the FMLA was enacted on February 5, 1993, the Act became effective, in the general case, on August 5, 1993. But in cases involving CBAs in effect on that date, the Act did not become effective until February 5, 1994, unless the CBA was terminated earlier. The CBA between the Postal Service and the APWU was in effect on August 5, 1993, and was terminated on November 20, 1994. Thus, the effective date of the FMLA, as it applies to Postal Service employees covered by the APWU CBA, including plaintiff, was February 5, 1994. From this it follows that any of plaintiff's absences occurring before that date were not protected by the Act.

■ This conclusion is not altered by the fact that both the Postal Service and the APWU voluntarily adopted the terms of the FMLA and explicitly made them effective with respect to their employees and mem-

bers beginning in August 1993.[4] Private parties have no power to change or vary, by fiat or agreement, the effective date of a legislative enactment. Only Congress can set a law's effective date. It follows that there is no merit to plaintiff's argument, based on the employee handbook and the Employee Labor Relations Manual, that the FMLA became effective as to him on August 5, 1993.

And this is so notwithstanding that the FMLA provides that "[n]othing in this Act ... shall be construed to discourage employers from adopting ... leave policies more generous than [those required] under this Act." 29 U.S.C. § 2653. To be sure, the policy adopted by the Postal Service and the APWU fits within this provision: it is "more generous" than the FMLA in that it granted employees certain rights earlier than did the statute. But all that follows from § 2653 is that the parties were entitled to adopt this policy as part of the CBA without running afoul of the FMLA. Section 2653 does not mean, however, that the parties, by adopting this policy, could make the Act effective before the date Congress specified. In other words, while the FMLA may require an employer to adopt leave policies in a CBA that provide greater benefits to employees than do the terms of the FMLA, see 29 C.F.R. § 825.700(a), this does not mean that the FMLA provides a cause of action for violation of those CBA policies. See Rich v. Delta Air Lines, Inc., 921 F.Supp. 767, 773 (N.D.Ga.1996) ("An employer's contractual obligations are distinct, however, from the regulation at issue and the FMLA itself."). Thus, even assuming that the substance of the FMLA was incorporated into the Postal Service's CBA through its newly adopted internal policy, a cause of action based on a violation of that policy would have to be founded on the CBA itself, and not on the statute, because, by definition, a plaintiff cannot bring a cause of action on a statute that is not yet effective. See Emmert v. Runyon, Civ. A. No. AW–95–2839, at 7 (D.Md. Feb. 3, 1998) (holding that the Act's effective date in

that case was February 5, 1994, notwithstanding the fact that the Postal Service adopted the provisions of the FMLA in August 1993). Simply put, the Postal Service's decision to implement a more generous leave policy is a matter of private agreement that cannot expand plaintiff's *statutorily* granted rights.

In this case, therefore, the FMLA did not take effect with respect to Postal Service employees who were APWU members until February 5, 1994. From this it follows that plaintiff was not covered by the FMLA during the first two absences listed on his second Notice of Removal, namely December 30, 1993, to January 7, 1994, and January 27, 1994 to February 4, 1994.

**B. *Plaintiff's Eligibility for FMLA Coverage***

The next question presented is which of plaintiff's absences after the effective date of the Act can be counted as protected FMLA leave. If an absence is protected by the Act, it cannot legally serve as a basis for the decision to terminate plaintiff.

■ The FMLA allows an employee to take unpaid leave to care for a serious medical condition for up to twelve weeks in any twelve-month period. *See* 29 U.S.C. § 2612(a)(1); 29 C.F.R. § 825.100(a). Such leave may be taken in one block of time, or as intermittent leave (for example, two days a week), or on a reduced schedule (for example, part-time employment). *See* 29 C.F.R. § 825.203(a) (stating that intermittent leave can be taken in blocks as small as one hour and as long as several weeks, and that a reduced schedule usually consists of a change from full-time to part-time employment). Plaintiff here sought intermittent leave to care for his wife, who had recently suffered a back injury.[5] Only an "eligible employee" is entitled to medical leave under the Act; defendant contends that plaintiff was not eligible for such leave under the FMLA.

---

**4.** Specifically, the employee handbook applicable at the time provided that the terms of the Act would apply to all employees as of August 5, 1993; a bulletin issued to all postal employees in the summer of 1993 confirmed this.

**5.** Section 2612(a)(1) of Title 29 allows an employee to take family medical leave either for himself or to care for close family members.

The Act defines the term "eligible employee" as one who has been employed

> (i) for at least 12 months by the employer with respect to whom leave is requested ...; and
>
> (ii) for at least 1,250 hours of service with such employer during the previous 12–month period.

29 U.S.C. § 2611(2)(A). In other words, to be eligible an employee must have been employed "for at least 1,250 hours of service during the 12–month period immediately preceding the commencement of the leave." 29 C.F.R. § 825.110(a)(2). For the twelve months immediately preceding February 25, 1994, and for the twelve months preceding any date after February 25, 1994, plaintiff worked less than 1,250 hours. Thus, he was an eligible employee under the FMLA only between February 4, 1994, the effective date of the Act, and February 24, 1994, the last date on which he had worked 1,250 hours in the preceding twelve months.[6]

 The first date after the effective date of the FMLA on which plaintiff took medical leave to care for his wife was February 19, 1994. The parties do not dispute that on this date plaintiff was eligible to take leave under the FMLA. Instead, the dispute in this case focuses on plaintiff's eligibility for absences taken after February 19, 1994. Defendant contends that each of these absences constituted a separate period of leave, and that plaintiff was required to reestablish his eligibility before each such absence. Plaintiff, by contrast, argues that these absences, all of which were taken in the same twelve-month period, pursuant to the same notice to his employer, and for the same medical condition (his wife's back injury), were part of one, single period of intermittent leave, and therefore that he needed to establish his eligibility only when he took his first absence pursuant

to that leave. The import of this dispute is readily apparent: if plaintiff is correct, then the fact that he was eligible on February 19, 1994, means that all of his subsequent leave was protected under the Act and therefore could not form the basis for any decision to terminate him; if, however, defendant prevails on this argument, then none of plaintiff's eleven absences subsequent to the one from February 19, 1994, to March 3, 1994, would be protected under the Act. The Act and the regulations promulgated thereunder persuasively support the conclusion urged by plaintiff. While not addressing this point directly, they nonetheless make clear that an employee who is eligible for intermittent leave need only establish his eligibility on the occasion of the first absence and not on the occasion of each subsequent absence.

As noted above, to be eligible for FMLA-protected leave, an employee must have been employed "for at least 1,250 hours of service during the 12–month period immediately preceding the commencement of *the leave.*" 29 C.F.R. § 825.110(a)(2) (emphasis added); *see also* 29 C.F.R. § 825.110(d) ("The determination of whether an employee has worked for the employer for at least 1,250 hours in the past 12 months ... must be made as of the date *leave* commences." (emphasis added)). The crux of this matter, then, is what the term *leave* means. If the term encompasses all absences that together make up a period of intermittent leave, then an employee's eligibility would be determined only at the time the first absence is taken; that point in time would constitute "the commencement of the leave." If, on the other hand, the term *leave* is synonymous with *absence*, then an employee's leave would commence again each time the employee left work to care for his own or a family member's medical condition, and he would therefore be required to reestablish

---

**6.** This analysis assumes, as did the parties, that the Postal Service measures "the previous 12–month period" from the date FMLA leave is first taken, and then backwards twelve months. This is not the only way the regulations contemplate that the twelve-month period may be measured, however. For example, the regulations also contemplate that an employer could simply ask if the employee worked 1,250 hours in the previous calendar year, or in the previous fiscal year. *See* 29 C.F.R. § 825.200(b).

The record here discloses that plaintiff worked over 1,300 hours in the previous leave year. Thus, if the Postal Service were to use the leave year as the measuring period for FMLA eligibility, and not the twelve months ending on the date FMLA leave is first taken, then all of plaintiff's absences in 1994 would arguably have been protected, given that he would have worked at least 1,250 hours in the previous twelve-month period, i.e., in the 1993 leave year.

his eligibility at the beginning of each absence.

▮ Adopting this latter position would render the term *intermittent leave* meaningless, essentially reading it completely out of the statute. The FMLA provides that, in some circumstances, leave may be taken intermittently. *See* 29 U.S.C. § 2612(b)(1); *cf.* 29 C.F.R. § 825.203(a) ("Intermittent leave is FMLA leave ...."). Leave that is taken intermittently must, by definition, comprise periods in which the employee is absent from work and periods in which the employee is present at work. The term denotes, then, a single set of many separate, yet related, absences. Were this not so, and if each absence were deemed a separate period of leave, then there would be no such thing as intermittent leave: an employee who was absent for numerous, nonconsecutive periods for the same qualifying reason would be deemed to have taken numerous, separate periods of *continuous* leave each time he returned to and then left work. In no sense would such leave be "intermittent"; it would, instead, be several separate and distinct periods of *continuous* leave. Yet the Act clearly contemplates otherwise, as it provides for both types of leave. *See* 29 C.F.R. § 825.203(c)(1) (differentiating intermittent and continuous leave). Thus, a series of absences, separated by days during which the employee is at work, but all of which are taken for the same medical reason, subject to the same notice, and taken during the same twelve-month period, comprises one period of intermittent leave. From this it follows that plaintiff must establish his eligibility only on the occasion of the first absence, and not on the occasion of every absence thereafter. *See* 29 C.F.R. § 825.110(d) (providing that the determination of eligibility "must be made as of the date leave commences").

Further support for this conclusion can be found in the FMLA's provision that "[t]he taking of leave intermittently ... shall not result in a reduction in the total amount of leave to which the employee is entitled." 29 U.S.C. § 2612(b)(1). Only the result reached here, namely that eligibility for intermittent leave is determined once and for all on the occasion of the first of a series of absences, is consistent with this provision. Consider, for example, an employee who has worked just over 1,250 hours in the preceding twelve months. This employee then begins to take intermittent FMLA leave, and, because he is absent from work to care for a serious medical condition, his hours fall below the 1,250–hour threshold for the subsequent twelve-month period. In these circumstances, the employer could not deny the employee continued intermittent FMLA leave based on his failure to work the requisite number of hours if the only reason the employee fell below the minimum-hours requirement was because he took leave to which he was statutorily entitled; to deny such leave would directly contravene the language of § 2612(b)(1). This is precisely the case here. Plaintiff worked at least 1,250 hours in the twelve months preceding February 19, 1994, the first date on which he took FMLA leave after the Act's effective date. By February 25, however, he had fallen below this threshold, to 1,244 hours in the preceding twelve months; this decrease was a direct result of his taking FMLA leave earlier in the month. Under § 2612(b)(1), plaintiff did not relinquish his status as an eligible employee simply because such a decrease occurred. Any contrary conclusion would be anathema to the Act's goals, and thus could not be countenanced.

The regulation defining intermittent leave provides yet additional support for the result reached in this case. Section 825.203(a) of Title 29 of the Code of Federal Regulations defines intermittent leave as "FMLA leave taken in separate blocks of time due to a single qualifying reason." The first part of this definition, i.e., "separate blocks of time," indicates that intermittent leave is comprised of individual, periodic absences. As discussed above, defining intermittent leave in this sum-of-the-parts fashion forecloses a construction that deemed each absence a distinct period of leave. The second part of the definition in § 825.203(a), namely that intermittent leave is leave "due to a single qualifying reason," also supports the instant analysis. It teaches that as long as the separate absences are taken for the same medical condition, they are all part of one intermittent leave period. In this event, eligibility need only be established once, at the begin-

ning of the leave. *See* 29 C.F.R. § 825.110(a)(2). Were this not so, and if an employee were required to reestablish his eligibility before each absence even if each absence were for the same medical condition, then there would be no difference between the treatment of absences taken for the same medical condition and those taken for different medical conditions. In either case, a determination that the employee was eligible for FMLA leave would remain effective only until the employee returned to work. Section 825.203(a), however, makes plain that this is not the case, and that an employee who requests several distinct periods of absence for "a single qualifying reason" is seeking only one period of intermittent leave.[7] Thus, the definition of intermittent leave provided by the regulations buttresses the conclusion that an employee need only establish his eligibility the first time he takes an absence pursuant to an intermittent-leave plan.

Finally, the conclusion reached here is supported by 29 C.F.R. § 825.110(f), a regulation concerning which employers are subject to the requirements of the FMLA. Under the Act, an employer is a "covered employer" only if it employs at least fifty employees during the year. *See* 29 U.S.C. § 2611(4)(A)(1). Section 825.110(f) provides that if the employer has more than fifty employees when an employee begins his intermittent leave, but then during the intermittent leave the employer's workforce drops below fifty employees, the employer nonetheless remains a covered employer with respect to that employee and the leave requested, and the employee continues to be able to

take advantage of the leave authorized by the Act. In other words, the regulation provides that if an employer is covered by the Act on the date an employee takes his first absence as part of a period of intermittent leave, that employer will continue to be covered with respect to that employee throughout the leave period even though the employer would not be covered if the existence of such coverage were determined for the first time at some later point during the intermittent leave. *See* 29 C.F.R. § 825.110(f) ("[O]nce an employee is determined eligible ... the employee's eligibility is not affected by any subsequent change in the number of employees employed"). This regulation is directly analogous to the situation presented here: once an employee is determined eligible based on the number of hours he has worked in the twelve months preceding the first date of the leave, "the employee's eligibility is not affected by any subsequent change in the number" of hours he worked in the twelve months prior to any subsequent date on which he takes an absence pursuant to his intermittent leave for the same medical condition.[8]

Against this conclusion, defendant offers two examples of absurd, or at least undesirable, results that defendant contends might occur in light of the instant interpretation of the eligibility criteria. First, defendant suggests that the result reached here would allow an employee to take twelve weeks of FMLA leave over a period of many years— "forever," defendant says—provided that the first time leave is taken the employee has worked the requisite 1,250 hours.[9] Contrary

---

7. By contrast, leave taken in separate blocks of time for *different* medical conditions, according to this definition, would not constitute "intermittent leave," but would instead constitute several separate instances of continuous leave, for each of which an employee would have to establish his eligibility.

8. A contrary conclusion would lead to the following nonsensical result: An employee who worked at least the requisite 1,250 hours in the previous twelve-month period, properly requested FMLA leave, and then began, for example, a six-week continuous leave period, but later became "ineligible" halfway through the six weeks because his total number of hours worked had decreased, would be able to continue with his leave and take the rest of the time off under the FMLA. But an

employee who, for example, took two days off every week to care for a sick parent, but at some point many weeks into this schedule dropped below 1,250 hours worked in the previous twelve months, would all of a sudden have to cease providing care to his parent. Clearly Congress could not have intended these divergent results, results that differ simply because of the frequency of leave required.

9. Specifically, defendant offers the hypothetical of an employee who suffers from asthma and provides his employer with a doctor's certification that he needs to take medical leave for this condition. Given this, defendant incorrectly suggests that this employee could take several days off every year for decades to care for this condition based solely on the original certification.

to defendant's suggestion, however, leave cannot be taken "forever" on the basis of one leave request. Instead, the statute grants an employee twelve weeks of leave *per twelve-month period,* not indefinitely. *See* 29 U.S.C. § 2612(a)(1) ("[A]n eligible employee shall be entitled to a total of 12 workweeks of leave during any 12–month period ...."); *accord* 29 C.F.R. § 825.200(a). Any eligibility determination made on the date leave commences, then, can apply only to the twelve weeks the employee plans to take within the current twelve-month period, and thus defendant's fears on this score are unfounded.

Defendant's second proposed absurd consequence of the result reached here is equally unmoving. Defendant contends that under this analysis, an employee would be eligible to take periodic FMLA absences for a condition that arose at a time when the employee was eligible to take protected leave, even if the employee later dropped below the 1,250–hour requirement, but that same employee would be unable to take leave for a different medical condition that arose for the first time after he had dropped below the 1,250–hour threshold. To be sure, these circumstances might well occur given the result reached here, but they are not at all absurd; the are instead simply a natural consequence of the requirement that an employee give notice to an employer and establish his eligibility each time he wants to take FMLA leave to care for a *different* health condition. *See* 29 U.S.C. § 2612(a)(1)(C), (D); 29 C.F.R. § 825.203(a). In other words, defendant's example merely illustrates the sensible operation of the Act's eligibility requirements.

The preceding discussion compels the conclusion that, because intermittent leave includes in its scope all absences taken to care for the same medical condition, within the same twelve-month period, and pursuant to the same notice, an employee seeking intermittent leave under the FMLA need only establish his eligibility at one point in time, namely immediately before the first absence

taken as part of the intermittent leave. That date is "the date leave commences," 29 C.F.R. § 825.110(d), and thus the only date on which the employee must establish that he worked at least 1,250 hours during the preceding twelve-month period. *See* 29 C.F.R. § 825.110(a)(2) (stating that the employee must have worked 1,250 hours "during the 12–month period immediately preceding the commencement of the leave").

In the instant circumstances, then, to show that he was an eligible employee for all absences taken after the effective date of the FMLA, plaintiff need only show that he was eligible on the *first* date he took such an absence, namely February 19, 1994. And the parties do not dispute that on February 19, 1994, plaintiff was indeed an eligible employee under the FMLA. Accordingly, because all of the leave plaintiff took subsequent to February 19, 1994, was for the same medical purpose, subject to the same notice,[10] and within the same twelve-month period, he was an eligible employee for all absences after that date, and thus they were all covered by the FMLA. It follows that defendant's motion to dismiss must be denied to the extent it rests on the allegation that plaintiff's absences were not protected under the FMLA.

### C. *Cause of Plaintiff's Termination*

■ The foregoing analysis demonstrates that all of plaintiff's absences taken after February 19, 1994, that were listed on his second Notice of Removal were protected under the FMLA. That leaves two listed absences, namely from December 30, 1993, to January 7, 1994, and from January 27, 1994, to February 4, 1994, that were not protected by the FMLA, as they were taken before the Act's effective date. Because these are the only non-FMLA-protected absences listed, they are the only absences that might lawfully have formed the basis for Robinson's decision to terminate plaintiff. *See* 29 U.S.C. § 2615(a)(2) (providing that an employee may not be terminated because he has taken leave pursuant to the FMLA). Plaintiff, however,

10. The FMLA requires an employee to give his employer notice of planned FMLA leave, in most circumstances, at least 30 days before the leave is to commence. *See* 29 U.S.C. § 2612(e). For purposes of the instant motion, the parties do not dispute the adequacy or timeliness of plaintiff's notice.

contends that Robinson unlawfully made the decision to terminate him based, at least in part, on the FMLA-protected absences. Defendant disagrees, contending instead that the current record establishes, indisputably, that plaintiff's termination was based solely on absences unprotected by the Act, and thus that summary judgment should be entered in his favor. In support, defendant submits Robinson's declaration, in which she avers that her decision to terminate plaintiff was based on all fourteen of his absences, but that the decision would not have been different had any one of those absences been removed from the calculus. In other words, Robinson states that she would have made the same decision to terminate plaintiff based on any thirteen of the fourteen absences listed on the second Notice of Removal.[11] What she does not testify to, however, is what her decision would have been had only *two* of the fourteen absences been considered. That is, nowhere does Robinson state that she would have fired plaintiff in December 1994 solely on the basis of his two non-FMLA absences in January 1994. Given this, there remains a genuine issue of material fact, namely what the basis was for plaintiff's termination.

Notwithstanding this, defendant asks the Court to hold as a matter of law, based on the existing record, that there is no dispute that plaintiff would have been fired solely on the basis of his unprotected leave. The record simply does not support such a conclusion, however: First, Robinson's declaration nowhere indicates that plaintiff was *not* terminated because of his FMLA absences, and thus it does not provide the factual support that defendant would need to prevail on this motion. Second, on the facts presented here,

a reasonable jury certainly could conclude that (i) plaintiff took fourteen absences, the latter twelve of which were protected by the FMLA; (ii) plaintiff was terminated; and (iii) his termination was unlawfully based, at least in part, on the twelve statutorily protected absences, and not on the first two unprotected absences that occurred almost a year before the termination. Whether plaintiff will ultimately succeed in proving this charge must await either a trial or further development of the record.[12]

Accordingly, defendant's motion, to the extent it seeks summary judgment on the issue of causation of plaintiff's termination, must be denied. *See* Rule 56(c), Fed.R.Civ.P. (providing that summary judgment should be denied if there remains a genuine issue of fact); Rule 56(f), Fed.R.Civ.P. (providing that summary judgment should be denied if adequate discovery has not been taken to support an opposition to the motion).

An appropriate Order will issue.

---

11. This testimony is offered because, under defendant's theory, the first two absences predate the effective date of the statute, and the latter eleven absences were taken when, according to defendant, plaintiff was not an eligible employee. That would leave only one absence, from February 19, 1994, to March 3, 1994, that would be covered by the FMLA. Robinson's testimony thus allows for the conclusion that even if that one protected absence were removed from the analysis, she would still have terminated plaintiff based on his thirteen other, allegedly unprotected absences.

12. The parties dispute the proof scheme that should apply in considering whether the protected absences were the cause of plaintiff's termination. Plaintiff argues for a simple preponderance-of-the-evidence approach, whereas defendant advocates a burden-shifting/causal-nexus paradigm similar to that applied in the Title VII context. *See, e.g., Leary v. Hobet Mining, Inc.,* 981 F.Supp. 452, 455 (S.D.W.Va. 1997) (FMLA case adopting proof scheme used in Title VII retaliatory discharge cases). Because the record is too anemic at this point to permit a summary judgment ruling on either ground, the issue is not resolved here.