**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0335n.06

**No. 12-5309**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

CYNTHIA GRAHAM,                                                   )
                                                                 )
    Plaintiff-Appellant,                          )
                                                                 )
v.                                                               )   ON APPEAL FROM THE UNITED
                                                                 )   STATES DISTRICT COURT FOR THE
BLUECROSS BLUESHIELD OF                                          )   EASTERN DISTRICT OF TENNESSEE
TENNESSEE, INC.,                                                 )
                                                                 )
    Defendant-Appellee.                           )

Before:  SUTTON and STRANCH, Circuit Judges, and STEEH, District Judge[*]

**JANE B. STRANCH**, Circuit Judge.  Plaintiff Cynthia Graham worked for defendant BlueCross BlueShield of Tennessee (BCBST) until she was terminated for excessive absenteeism after failing to submit medical recertification following a period of extended leave.  Graham filed suit against BCBST, alleging that her termination violated the Family Medical Leave Act of 1993 (FMLA).  The district court granted BCBST's motion for summary judgment, holding that no genuine issue of material fact existed as to whether it had a reasonable basis for seeking recertification and was justified in terminating Graham for excessive absenteeism after she failed to provide it.  Graham appeals this decision.  We **AFFIRM** the judgment of the district court.

---

[*]The Honorable George Caram Steeh, United States District Court Judge for the Eastern District of Michigan, sitting by designation.

# I. BACKGROUND

Cynthia Graham was employed by BCBST as a configuration analyst. During her tenure, there were two relevant employee policies in force: an attendance policy and an FMLA leave policy. The attendance policy provided that an employee could face termination if he or she accrued more than five unapproved absences in a rolling 12-month period. It explicitly provided that an absence would not be considered an incident if covered under the FMLA. Graham admitted that she was familiar with this policy.

The FMLA policy, administered by Unum, required employees to provide certification from a health care provider. BCBST also "reserve[d] the right to require re-certification of the continuance of a serious health condition every [six] months." Recertification could also be required prior to the expiration of six months if "[c]ircumstances described by the original certification ha[d] changed significantly." Graham was aware that when an employee's initial certification for intermittent FMLA leave provided that the frequency of absences was unknown, Unum would request updated information from the employee's physician once he or she accrued seven absences in a month.

In May 2010, Graham requested intermittent FMLA leave for migraine headaches; two days later, Unum sent a letter stating that she was eligible for leave, but would need to submit medical certification by May 26. Graham's medical certification stated that the expected leave frequency was one episode per month, three to four days per episode. On June 18, Unum notified Graham that the submitted certification did not support her leave request because she had requested leave four times per month lasting three to four days, but permitted her to submit additional information from her doctor. On June 28, Graham's doctor modified the certification, noting that Graham "occasionally"

-2-

had two headaches per month lasting five to six days. Graham, however, subsequently changed her requested leave to four episodes per month, six days per episode. On June 30, Unum sent Graham another letter stating that her leave request and her medical certification were inconsistent, but again allowed for modifications to the certification. On July 2, Graham's physician amended the certification, but stated that he could not "give a clear frequency or duration [for her absences] at this time." On July 13, Unum notified Graham that she had been approved for intermittent FMLA leave for the periods of May 13 through July 1 and July 12 through January 1, 2011. The letter clarified that additional medical certification might be required should Graham seek to extend her leave "or as otherwise permitted by law" and that she must notify Unum and her supervisor "within [two] business days from the absence each time [she] need[ed] to take intermittent leave for the certified reason." Graham stated that she understood that her requested leave was for an intermittent schedule, not a particular block of time.

Following this approval, Graham missed the next 28 days of work, from July 14 to August 20. On July 26, Unum sent Graham a letter informing her that the "frequency and/or duration" of her absences differed from her medical certification and that it required recertification by August 13 in order to support absences beyond July 22, which was the date of Graham's seventh absence that month. Graham claimed that she did not receive the letter, although she admitted that it was properly addressed. On August 17, Unum sent a follow-up letter informing Graham that it had not received recertification and that any absences from July 23 onward were not FMLA-approved. Graham also claimed that she did not receive this letter.

Graham returned to work between August 20 and August 30, although it is unclear whether she returned for this entire period or was only at work on specific days. She was absent again from

August 30 to September 3. Graham acknowledged knowing in September that her employment might be jeopardized because of excessive absenteeism, but indicated she was unsure of when she became aware of this fact. She also alluded to speaking with Harold Gault, a human resources consultant, about the need to provide additional information from her doctor. BCBST alleged that Graham met with supervisors on several occasions during September regarding the need to submit additional medical certification. Graham asserted in her affidavit that these meetings did not occur, but her previous deposition testimony noted that she met with supervisors closer to the time she was terminated. Because Graham had not submitted medical recertification by September 24, her employment was terminated based on the accumulation of 26 unexcused absences.

Graham filed suit against BCBST, alleging that it was "interfering with, restraining and denying" her rights under the FMLA. BCBST filed a motion for summary judgment in which it argued that Graham was terminated for excessive absences that were not FMLA-qualified. The district court granted BCBST's motion, initially rejecting Graham's contention that the "unknown" frequency of absences in her initial medical certification authorized use of her remaining FMLA leave in any form she wished. It also concluded that no genuine issues of material fact existed regarding the reasonableness of BCBST's request for medical recertification due to changed circumstances—the duration of Graham's absences exceeded any of her past absences. The court found it unnecessary, however, to decide whether the policy of requiring recertification after seven monthly absences was reasonable. Because Graham failed to provide recertification after having the opportunity to do so, the court ruled that BCBST was justified in terminating her.

## II. DISCUSSION

### A.     Standard of Review

This court reviews a district court's grant of summary judgment de novo. *Chapman v. United Auto Workers Local 1005*, 670 F.3d 677, 680 (6th Cir. 2012). "Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and affidavits show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741, 748 (6th Cir. 2012) (citing Fed. R. Civ. P. 56(a) & (c)). The burden falls on the moving party to demonstrate that no genuine issues of material fact exist. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether summary judgment is appropriate, appellate courts view the facts, including all inferences, in the light most favorable to the nonmoving party. *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 346 (6th Cir. 2012) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). A jury, rather than a judge, is responsible for making credibility determinations, weighing the evidence, and drawing legitimate inferences from the facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The central inquiry at the summary judgment stage "is whether the evidence presents a sufficient disagreement to require submission of [the plaintiff's] claims to a jury or whether the evidence is so one-sided that [the defendant] must prevail as a matter of law." *Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 648 (6th Cir. 2012) (citing *Anderson*, 477 U.S. at 251-52).

### B.     Interference Claim

#### i.     Initial medical certification

The FMLA allows an employee who suffers from a "serious health condition" to take a total of twelve weeks of leave each year if the condition renders him or her "unable to perform the

functions of the position." 29 U.S.C. § 2612(a)(1)(D). Migraine headaches are considered a "serious

health condition" for purposes of the FMLA. *See* 29 C.F.R. § 825.113(d) (providing that "headaches

*other than migraine*" are not "serious health conditions" under the FMLA (emphasis added)).

FMLA leave may be taken on an intermittent basis, *see* 29 U.S.C. § 2612(b)(1), which this court has

described as "a series of absences, separated by days during which the employee is at work, but all

of which are taken for the same medical reason, subject to the same notice, and taken during the

same twelve-month period." *Davis v. Mich. Bell Tel. Co.*, 543 F.3d 345, 350-51 (6th Cir. 2008)

(internal quotation marks omitted).

Graham claims that her initial medical certification entitled her to take leave in whatever

increment she chose, and that BCBST's reliance on her absences to justify her termination violated

the FMLA. In other words, she asserts an "interference" claim under the FMLA. *See Culpepper v.

BlueCross BlueShield of Tenn., Inc.*, 321 F. App'x 491, 496 (6th Cir. 2009) ("An employee . . . who

believes that she was entitled to FMLA leave with respect to her unexcused absences, may assert a

cause of action for FMLA interference."). In order to succeed on an interference claim, Graham

must establish the following elements:

> (1) she was an eligible employee, (2) the defendant was an employer as defined under
> the FMLA, (3) she was entitled to leave under the FMLA, (4) she gave the employer
> notice of her intention to take leave, and (5) the employer denied the employee
> FMLA benefits to which she was entitled.

*Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006).

We agree with the district court's ruling that Graham's initial medical certification did not

entitle her to take her remaining nine weeks of FMLA leave in the configuration of her

choice—which goes to the fourth element of Graham's claim. One of the FMLA's purposes at issue

-6-

here—entitling employees to reasonable leave for personal medical reasons—must be effectuated "in a manner that accommodates the legitimate interests of employers." 29 U.S.C. § 2601(b)(1)–(3). The district court correctly observed that the FMLA's requirement that an employee's medical certification for intermittent leave include "the expected duration of the intermittent leave," 29 U.S.C. § 2613(b)(6), serves to put the employer on notice as to how much work the employee might miss and to allow the employer to plan accordingly. To hold that a medical certification for intermittent leave—which provides no estimate as to the frequency or duration of the employee's absences—authorizes an employee to take leave in whatever increment he or she chooses would not properly balance the employee's interests with those of the employer.

Because we agree with the district court's ruling on this matter, our focus is on the fifth element of Graham's interference claim. This requires us to analyze whether genuine issues of material fact exist regarding the reasonableness of BCBST's request for medical recertification.

### ii.     Request for medical recertification

An employer may "require that [an] eligible employee obtain subsequent [medical] re-certifications *on a reasonable basis*." 29 U.S.C. § 2613(e) (emphasis added). That which constitutes a "reasonable basis" is undefined by the FMLA itself. It is expanded upon, however, in the relevant regulations. Generally, an employer cannot request recertification more often than every 30 days "and only in connection with an absence by the employee." 29 C.F.R. § 825.308(a). However, recertification may be requested more frequently if "[c]ircumstances described by the previous certification have changed significantly (*e.g.*, the duration or frequency of the absence, the nature or severity of the illness, complications)." 29 C.F.R. § 825.308(c)(2). The following example is provided:

> [I]f a medical certification stated that an employee would need leave for one to two days when the employee suffered a migraine headache and the employee's absences for his or her last two migraines lasted four days each, then the increased duration of absence might constitute a significant change in circumstances allowing the employer to request a recertification in less than 30 days.

*Id.* If the employer requests recertification, the employee has 15 calendar days to obtain the appropriate documentation. *See* 29 C.F.R. § 825.305(b); *see also* 29 C.F.R. § 825.308(d).[1] "At the time the employer requests certification [or recertification, it] must also advise an employee of the anticipated consequences of an employee's failure to provide [it]." 29 C.F.R. § 825.305(d). The employer may deny the employee FMLA leave if the employee fails to submit medical certification (as long as the request complies with the FMLA). *Id.*; *see also* 29 C.F.R. § 825.313(c). While the original certification request must be in writing, "[a]n employer's oral request to an employee to furnish any subsequent certification is sufficient." 29 C.F.R. § 825.305(a).

We agree with the district court's ruling as to the reasonableness of BCBST's request for recertification after Graham's 28 consecutive absences, in that they constituted "significantly changed circumstances" under the applicable regulation. *See* 29 C.F.R. § 825.308(c)(2). As the district court observed, this period of absenteeism was twice as long as Graham's longest previous episode in March 2007. *Cf. Andrews v. CSX Transp., Inc.*, No. 3:06-cv-704-J-32HTS, 2009 WL 5176462, at *7 (M.D. Fla. Dec. 22, 2009) (finding the employer's recertification request to be reasonable where the employee, who was approved for intermittent leave of an "unknown" duration, incurred 24 absences, which was "a significant up-tick in [her] use of FMLA leave time").

---

[1]Although it is not entirely clear from Graham's deposition when in September she became aware of the need for recertification, she does not argue that she was given inadequate time to respond, only that she was not required to provide recertification.

Graham contends, however, that the district court's grant of summary judgment was inappropriate because it overlooked the assertion in her affidavit (and referenced in her response to BCBST's statement of undisputed facts) that she was not notified of the need to submit additional medical certification. The district court, however, based its decision on Graham's deposition testimony that by September 2010, she was aware BCBST considered her initial medical certification inadequate to support the number of absences she had accrued. Graham's argument appears to be based on a belief that BCBST was required to request recertification in written form. However, an oral request for subsequent certification is permissible under the applicable regulation. *See* 29 C.F.R. § 825.305(a). Therefore, even assuming that Graham did not receive written notice, she was sufficiently alerted to the need for recertification and to the fact that her employment was in jeopardy if it was not provided.

As to the alleged factual discrepancy between whether Graham had several meetings with her supervisors, Graham admitted in her deposition to engaging in such meetings, although she contended that they occurred closer to the date on which she was terminated. Furthermore, she noted that during the time period leading up to her termination, her supervisors asked whether she was obtaining the necessary information from her doctors. To the extent that the statement in Graham's affidavit contradicts BCBST's assertions, we do not read it to create a genuine issue of material fact. The general rule is that "[a] party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony," *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986), and Graham provides no justification for any conflict between her two statements. *Cf. Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 908 (6th Cir. 2006) (holding that an affidavit filed after a motion for summary judgment that directly

contradicts prior sworn testimony "should be stricken unless the party opposing summary judgment provides a persuasive justification for the contradiction"). Moreover, Graham was aware that her employer required additional medical certification before it would designate her absences as FMLA leave. The manner in which this information was imparted is not dispositive in this case.

We pause to note, as did the district court, that the initial request for recertification occurred after only seven monthly absences, a request made pursuant to BCBST's FMLA policy. Although it is possible that such a blanket policy may not comport with the FMLA, the district court found the 28-day stretch of absences to be operative in this case. Because we also base our decision on this consecutive period of absences, it is unnecessary to consider the propriety of BCBST's policy.

If an employee fails to provide the requested recertification, "the leave is not FMLA leave." 29 C.F.R. § 825.313(c). Under these circumstances, BCBST was justified in concluding that the absences at issue were not FMLA leave based on Graham's failure to provide the necessary recertification. BCBST could therefore properly count the days after which recertification was necessary in support of Graham's termination.

### III. CONCLUSION

For the foregoing reasons, the district court's grant of summary judgment in favor of BCBST is **AFFIRMED**.