RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0231p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

KRISTOPHER JACKSON,

        *Plaintiff-Appellant,*

    *v.*

UNITED STATES POSTAL SERVICE, et al.,

        *Defendants-Appellees.*

⎤
⎟
⎟
⎟
⎬  No. 24-1860
⎟
⎟
⎟
⎦

Appeal from the United States District Court for the Eastern District of Michigan at Flint.
No. 4:21-cv-10966—Shalina D. Kumar, District Judge.

Decided and Filed: August 21, 2025

Before: MOORE, GIBBONS, and MURPHY, Circuit Judges.

───────────────

## COUNSEL

**ON BRIEF:** Keith Flynn, MILLER COHEN, P.L.C., Detroit, Michigan, for Appellant. James J. Carty, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellees.

GIBBONS, J., delivered the opinion of the court in which MOORE and MURPHY, JJ., concurred in different parts. MOORE, J., (pp. 24–27), delivered a separate opinion concurring in all but Part IV. MURPHY, J. (pg. 28), delivered a separate opinion concurring in all but Part III.A.3.b. of the lead opinion and in the judgment.

───────────────

## OPINION

───────────────

JULIA SMITH GIBBONS, Circuit Judge. Defendant, United States Postal Service ("USPS"), employed plaintiff Kristopher Jackson as a mail clerk. Jackson suffers from sickle cell anemia, which qualifies him for leave under the Family Medical Leave Act ("FMLA").

While working at USPS, Jackson routinely had unexcused absences—some covered by the FMLA and some not. Eventually, Jackson continued work under a Last Chance Agreement ("LCA") which stated that Jackson would be terminated from his position if he continued to be absent from his work for days not covered under the FMLA. According to USPS, Jackson still failed to attend work numerous times for no valid reason and was thus terminated from his position for violating the terms of his LCA.

Jackson then sued, claiming that several of his absences were covered by the FMLA, and that USPS's decision to terminate him violated the FMLA and the Rehabilitation Act. USPS moved for summary judgment and the district court granted the motion in part, finding that Jackson had failed to establish a prima facie case that he qualified for the FMLA on all but one of the disputed dates. The district court also determined that Jackson failed to put USPS on notice that he required accommodations under the Rehabilitation Act.

Because the district court was correct in its analysis on a few of the disputed dates and Jackson's claims under the Rehabilitation Act but nonetheless erroneously held that an FMLA medical certification can create a hard cap on unforeseeable intermittent FMLA leave, we reverse in part and affirm in part the district court's decision. We then remand to the district court to analyze the case in light of this opinion.

I.

Jackson was diagnosed with sickle cell anemia at birth. The symptoms of his condition vary in severity from day to day. As described by Jackson, on better days the disease causes fatigue, pain, and numbness, but on the worst days it causes temporary paralysis, which understandably affect Jackson's ability to engage in a variety of life tasks including his work.

Jackson began employment with USPS in November of 2011. During his time at USPS, Jackson had numerous issues with his attendance. So, in July 2018, USPS issued a notice of removal terminating Jackson's employment citing seventeen unscheduled absences, two notices of suspension, and a prior letter of warning. But Jackson was able to avoid job termination by agreeing to a LCA with his union and USPS. The agreement noted that this was, according to its terms, Jackson's "*final opportunity* to correct his work-related deficiencies." DE 46-10, LCA,

Page ID 328 (emphasis in original).  According to the agreement, Jackson could not have more than three unscheduled absences in any six-month period.  Unscheduled absences were defined as "any absence not scheduled and approved in advance of [Jackson's] reporting time."  *Id.* at 329.  The agreement also required Jackson to call a USPS hotline to report any unscheduled absences and prevented Jackson from having *any* absence without leave ("AWOL") for the two-year life of the agreement.  Finally, the agreement also stated that any FMLA-approved absences would not be used against Jackson provided his absence met "all the qualifications and documentation requirements."  *Id.*  Jackson signed and initialed the LCA multiple times.

Both prior to and after the LCA, Jackson used the FMLA to take leave for his sickle cell anemia.  In July 2018 (prior to the implementation of the LCA) Jackson renewed his FMLA certification form, in which his healthcare provider certified that he suffered from sickle cell anemia, among other conditions, and indicated the frequency of his flare-ups as twice per month.  *See generally Verkade v. U.S. Postal Serv.*, 378 F. App'x 567, 573 (6th Cir. 2010) ("The FMLA states that '[a]n employer may require that a request for leave . . . be supported by a certification issued by the health care provider . . . [, and t]he employee shall provide, in a timely manner, a copy of such certification to the employer." (quoting 29 U.S.C. § 2613(a) (alterations in the original))).

During the term of the LCA, Jackson was supervised by Erika Fields-Daniels.  Jackson alleges that Fields-Daniels was hostile to his requests for FMLA leave and discriminated against him because of his disability.  In particular, Jackson notes that when he told her he was not feeling well, Fields-Daniels told him there was nothing wrong with him and he should get back to work.  Fields-Daniels also allegedly "excessively scrutinized," CA 6, R. 14-1, Appellant Br. at 6**,** Jackson's requests for FMLA leave, but Fields-Daniels rejected that contention and stated that Jackson was being scrutinized because of the LCA.

Approximately six months after he was put on the LCA, USPS notified Jackson that he was being terminated from his position for violating the agreement.  The notice of termination indicated that Jackson had been on unscheduled leave six times: December 26, 2018 for 4.08 hours; February 27, 2019 for 0.43 hours; March 1, 2019 for 8.00 hours; March 8, 2019 for 1.16 hours; March 11, 2019 for 1.60 hours; and March 11, 2019 for 2.87 hours.  Jackson was also

noted as AWOL for 0.63 hours on March 26, 2019. However, Jackson claims that he did not violate his LCA. Jackson concedes that two of the four dates listed in the notice were correctly labeled as unscheduled leave: February 27, 2019, and March 8, 2019. However, he contends that the other four unexcused leaves and the one AWOL were FMLA covered and therefore did not count as violations for the LCA. Thus, for USPS to successfully show the LCA was violated, it would need to show two more unexcused absences or one AWOL absence. We briefly summarize the circumstances of the dates at issue.

*December 26, 2018.* On this date, Jackson had a medical appointment with his doctor which, according to Jackson, was "prescheduled." DE 47-2, Jackson Deposition, at 15–16. Jackson did not call into the USPS automated absence report system or request leave in advance as was required by his LCA. On the morning of his appointment, Jackson filled out a "3971 form," gave it to Fields-Daniels, and told her about his appointment and that it was covered FMLA leave.[1] Jackson then went to his doctor's appointment and returned with a doctor's note stating that he had gone to the doctor and could return to work the next day. There are two 3971 forms from that day. The first, signed by Jackson and Fields-Daniels on December 26, 2018, has the "sick leave" box checked and notes a doctor's appointment at 1:20 pm. The second 3971 form, signed by Jackson and Fields-Daniels on December 27, 2018, is for the hours after the doctor's appointment. That form also has the "sick" box checked and notes "NOT FMLA." Jackson contends that the "NOT FMLA" language was added after he signed the form, and that he did not consent to it. Jackson's December 26, 2018, absence was deemed not covered under the FMLA and was used to show that Jackson violated the LCA.

*March 1, 2019.* On February 28, 2019, Jackson was hospitalized due to his sickle cell condition. Jackson was discharged from the hospital the next morning and went straight to his workplace to provide medical documentation that he could not work before going home. Jackson did not call into the automated USPS unexcused absence system. When Jackson returned to work on March 4 after the weekend, Jackson brought with him his own 3971 form to make sure his leave was noted as covered by the FMLA. But Fields-Daniels had her own 3971

---

[1]The "3971 form" is the relevant USPS form for requesting leave under the FMLA. The form requires signatures by the employee and employer.

form on which she had checked a box labeled "Not FMLA Protected." Jackson refused to sign that form. Instead, he submitted his own form that stated his leave was FMLA protected *without* Fields-Daniels's signature. Despite the 3971 not being signed by Fields-Daniels, USPS human resources verified that Jackson's absence was covered under the FMLA and should be protected. Nonetheless, Jackson's absence was still counted as an unexcused absence for the purposes of calculating absences under the LCA.

*March 11, 2019.* On this date, Jackson woke up feeling ill from his sickle cell anemia. Jackson called into the USPS system to request his FMLA leave. USPS presented evidence in the form of Fields-Daniels's notes that Jackson called at 10:15 am, which was an hour past his start time. However, Jackson testified that he called before his start time. After taking some medication, Jackson felt better and reported to work at 10:53 AM. Jackson's acting supervisor that day was Michael Smith, not Fields-Daniels. Jackson informed Smith that he had a doctor's appointment for later that day and filled out a 3971 form that listed his leave for his doctor's appointment as covered under the FMLA. But Fields-Daniels's notes for that day indicate that Jackson made no mention of the FMLA when he requested leave to see a doctor. And the ultimate 3971 form supports that evidence because it notes Jackson as taking four hours of sick leave to see a doctor at 2:40 pm with no mention of the FMLA at all. This 3971 form was signed by Jackson and Smith.

Of note also, according to Jackson's complaint, Jackson needed to see the doctor that day due to his flare-up in the morning. But Jackson at his deposition testified that his doctor's appointment had been pre-scheduled earlier automatically due to his February 28 incident. And, furthermore, Jackson's medical records from the doctor that day show that he visited the doctor not for the February 28 incident, but for his annual medical exam.

USPS counted March 11, 2019, as two unexcused absences not covered under the FMLA: first when Jackson was absent in the morning and second when he was at the doctor's appointment.

*March 26, 2019.* On this date, USPS asserts that Jackson was supposed to begin work at 7:30 am for a special training. USPS provided to the district court a "Clerk Schedule" which

lists Jackson's reporting time as 7:30 am for a training.  Jackson states he was not aware that he needed to come to work earlier for the training.**2**  At 8:08 am on that day, after the training had begun, Jackson called the USPS reporting system to take FMLA leave due to a flare up.  The time between the beginning of Jackson's training and his call in to USPS was counted as AWOL.

After these six unexcused absences and one AWOL, Jackson was terminated on April 30, 2019, for violating the LCA.  In response, Jackson filed suit, bringing claims for FMLA interference, FMLA retaliation, discrimination and failure to accommodate his disability in violation of the Rehabilitation Act, and retaliation for his complaints about the Rehabilitation Act.  USPS moved for summary judgment on Jackson's claims.  The district court granted summary judgment in USPS's favor on all of Jackson's claims save for the FMLA interference and retaliation claims stemming from his March 1, 2019, denied FMLA leave.  The district court found that Jackson was not entitled take FMLA leave on either March 11 or March 26 because he was approved for only two days a month and had already used his FMLA leave for March.  The district court later denied Jackson's motion to reconsider.  In so doing the court noted that it had incorrectly interpreted the LCA to require three unscheduled leaves of absence when it really required four, but that ultimately did not matter because Jackson had four or more unscheduled leaves of absence.  The district court also held that Jackson had forfeited his argument that his FMLA medical certification did not limit him to just two days of FMLA leave a month because he failed to argue the issue in his initial briefs or at oral argument.

Jackson later settled his FMLA interference and retaliation claims for his March 1, 2019, absence.  Jackson now appeals the district court's summary judgment ruling.

II.

We review a grant of summary judgment by the district court de novo, viewing all the evidence and drawing all reasonable inferences in the light most favorable to Jackson, the non-moving party.  *Sec'y of Lab. v. Timberline S., LLC*, 925 F.3d 838, 843 (6th Cir. 2019).

---

**2**However, USPS presented evidence that Jackson did know because he had earlier called the store and asked the clerk to train him over the phone.  When the clerk refused, he engaged in a verbal altercation with her before hanging up.

"Summary judgment is properly granted where a dispute presents no genuine issue of material fact." *Macurdy v. Sikov & Love, P.A.*, 894 F.2d 818, 820 (6th Cir. 1990).

III.

First, we address Jackson's claims against USPS for interference with his FMLA rights and retaliation against him for making use of FMLA rights.  In this circuit there are two separate theories under which one can establish a violation of the FMLA.  *Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007).  The first is the "entitlement" or "interference" theory, which makes it "unlawful for employers to interfere with or deny an employee's exercise of [] FMLA rights[.]"  *Id.*  (citing 29 U.S.C. § 2615(a)(1)).  The second is the "retaliation" or "discrimination" theory, "which prohibits an employer from discharging or discriminating against an employee for 'opposing any practice made unlawful by' the Act."  *Id.* (quoting 29 U.S.C. § 2615(a)(2)).  Jackson bases his claims on both theories, and we address each in turn.

A.

Beginning with Jackson's FMLA interference claim, Jackson must demonstrate that "(1) [Jackson] was an eligible employee, (2) [USPS] was an employer as defined under the FMLA, (3) [Jackson] was entitled to leave under the FMLA, (4) [Jackson] gave [USPS] notice of [his] intention to take leave, and (5) [USPS] denied or interfered with [Jackson's] FMLA benefits to which [he] was entitled."  *Wallace v. FedEx Corp.*, 764 F.3d 571, 585 (6th Cir. 2014) (quotations omitted).

The only elements in dispute are (4) notice and (5) whether USPS interfered with Jackson's FMLA benefits to which he was entitled on the dates of December 26, 2018, March 1, 2019, March 11, 2019, and March 26, 2019.  In addition to addressing each date individually, we will also address Jackson's argument that his ultimate termination under the LCA was FMLA interference because he did not have four unexcused absences or one AWOL.[3]

---

[3]Jackson's claims for interference concerning the LCA and the four dates are intertwined, but they must be viewed separately.  This is because each date presents a potential interference claim individually, and then termination pursuant to the LCA is itself a potential interference claim depending on the number of valid claims Jackson asserted.  For instance, we see no reason why Jackson could not have no valid interference claim for the

1.

We begin with the December 26, 2018, absence.  The central issue with this absence, as for all of Jackson's absences, is notice.  "[T]o invoke the protection of the FMLA, an employee must provide notice and a qualifying reason for requesting the leave."  *Brohm v. JH Props., Inc.*, 149 F.3d 517, 523 (6th Cir. 1998).  In addition, an employee does not have to expressly assert his or her right to leave under the FMLA to gain its protections but must give the employer enough information to know that the leave might fall under the FMLA.  *Milman v. Fieger & Fieger, P.C.*, 58 F.4th 860, 872 (6th Cir. 2023).

Per regulation, there are also different notice requirements for "foreseeable" leave and "unforeseeable" leave.  If the leave is foreseeable, the employee must provide the employer "at least 30 days advance notice" before taking leave.  29 C.F.R. § 825.302(a).  If 30 days is not practicable, then notice "must be given as soon as practicable."  *Id.*  If the leave is unforeseeable, then the employee must provide notice of the FMLA leave "as soon as practicable under the facts and circumstances of the particular case."  *Id.* § 825.303(a).  When it comes to unforeseeable leave, an employee "must comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances."  *Id.* § 825.303(c); *see also Jorgenson v. Henry Ford Health Syst.*, No. 16-13389, 2018 WL 4701707, at *6 n.2 (E.D. Mich. Sept. 30, 2018).

In Jackson's case, notice *could* include complying with USPS's call-in system discussed above.  But "[n]othing in the regulation, however, suggests that an employee must adhere to an official written policy to provide sufficient notice under the FMLA when a different unwritten custom is typically followed."  *Festerman v. Cnty. of Wayne*, 611 F. App'x 310, 316–17 (6th Cir. 2015).  Jackson has presented enough evidence to show that USPS's custom differed from its written policy.  This evidence includes testimony from Jackson and a union representative that, in addition to calling in, USPS workers could also complete a 3971 form or verbally tell their supervisor they were taking FMLA leave.  In addition, an email from Fields-Daniels to HR

LCA (because he had four or more unexcused absences) but still have an individual claim for one or more listed dates.  Or to give another example, if he had four unexcused absences but not six, that would mean two FMLA interference claims for two dates and no interference claim for Jackson's termination under the LCA.

suggests that an employee can ask for FMLA leave just by filling out a 3971 form when she writes that Jackson "could have called the system requesting FMLA but he didn't. He could have filled out a 3971 requesting FMLA . . . but he didn't." DE 47-12, Fields-Daniels, Mar. 4, 2019 Email, Page ID 1194.

Jackson's intermittent leave—depending on the purpose for which he is using the leave—could be deemed unforeseeable *or* foreseeable. *See Render v. FCA US, LLC*, 53 F.4th 905, 925 (6th Cir. 2022) ("What determines where each employee falls on the foreseeability spectrum? The intermittent nature of leave does not dictate its predictability. Such leave could fall on either end.").[4] Planned treatments, such as Jackson's pre-scheduled doctor appointments, would fall under foreseeable leave. *See id.* Unexpected disease flare-ups, such as when Jackson has debilitating sickle cell flare-ups, would fall under unforeseeable leave. *See id.* 925. So, on those days that Jackson had a pre-scheduled doctor appointment, he needed to inform USPS of his intention to take FMLA leave 30 days in advance or as soon as practicable. For those dates that were unforeseeable, he also needed to inform USPS as soon as practicable, under the particular facts and circumstances of the case, in a way that complied with its policies. This could have included filling out a 3971 form, telling his supervisor, or calling on the hotline.

For Jackson's December 26, 2018, absence, the district court ruled against Jackson solely because he notified his employer fewer than 30 days before his foreseeable leave (pre-scheduled doctor appointment). This was an error, as the relevant regulations state at least 30 days *or* as soon as practicable. 29 C.F.R. § 825.302(a). However, because the evidence from both parties nonetheless indicates that Jackson's doctor's appointment on December 26 was pre-scheduled, it cannot be genuinely disputed that Jackson failed to provide evidence that he gave appropriate notice 30 days prior to *or* as soon as practicable. Therefore, the district court's failure to recognize the "as soon as practicable" prong of the regulation was harmless error. *See United States v. Kechego*, 91 F.4th 845, 855 (6th Cir. 2024) ("Regardless, we cannot grant relief because the district court's error, if any, was harmless."). Thus, we affirm the district court's holding that Jackson's claim for FMLA interference, with regard to his absence on December 26, 2018, failed to survive summary judgment.

---

[4]While styled as a concurrence, on this issue Judge Moore's opinion had a controlling majority.

2.

Next, we address the March 1, 2019, absence. The district court initially denied summary judgment to USPS. Jackson's claims relating to this date were later settled. Because the March 1 claims have now settled, we need not discuss them further. However, USPS now claims that because the March 1 claim was settled, Jackson must accept that his March 1 absence was unscheduled leave as one of the four strikes for the LCA. We see no reason why that would be true. The settlement bars us from considering the individual interference claims as it relates to March 1 as that has been settled and dismissed with prejudice. *See United States v. One Tract of Real Prop. Together With all Bldgs., Improvements, Appurtenances, & Fixtures*, 95 F.3d 422, 426 (6th Cir. 1996). But that does not necessarily mean that Jackson has waived any arguments that, with respect to a completely different issue (Jackson's termination pursuant to LCA), the March 1 absence did not count.[5] *See Ybarra v. Dish Network, L.L.C.*, 807 F.3d 635, 640 (5th Cir. 2015) ("Settlement of one set of claims did not affect the analysis applicable to the other set of claims."). Otherwise, no party would ever be able to settle a sub-issue in a case because then by settling the sub-issue all facts touched by that issue could be used against them. Such a rule makes very little sense.[6]

In considering the March 1 date, we agree with the district court's order. A jury could find that Jackson, having unforeseeably gone to the hospital, gave his notice "as soon as practicable," 29 C.F.R. § 825.303(a), when he went straight to his workplace the next day after being discharged from the hospital. *See also, e.g.*, *Barger v. Jackson, Tenn. Hosp. Co., LLC*, 92 F. Supp. 3d 754, 767–70 (W.D. Tenn. 2015) (example where plaintiff giving notice to employer shortly after leaving medical care survived summary judgment). Thus, for the purposes of

---

[5]Or to further clarify the point. Even if Jackson is not bringing a claim for his FMLA rights being violated on just March 1, that does not mean he did not have valid FMLA leave on March 1, which then could *not* be a basis of termination under the LCA without violating his FMLA rights.

[6]In addition, Jackson argues that the settlement agreement itself stated that "[t]he parties agree that they have not waived any other claims or defenses other than those related to the March 1, 2019, claims *that were not dismissed* by the Court's [order.]" CA6, R.21, Appellant Reply at 17 (emphasis added). This settlement agreement, however, is not in the record. *See Wheaton v. North Oakland Med. Ctr.*, 130 F. App'x 773, 779 (6th Cir. 2005) (noting that appellate courts cannot normally consider evidence not in the record). But given that the burden of proof on this argument is on USPS, the lack of a settlement agreement in the record is a problem for USPS and not Jackson. *See Browning v. Levy*, 283 F.3d 761, 772 (6th Cir. 2002).

summary judgment, Jackson's March 1 absence cannot count towards the violation of his LCA. But such a ruling does not affect his actual interference claim as it relates to March 1, as that claim was settled.

3.

We now address Jackson's claims that he was due FMLA leave for his two absences on March 11, 2019, and his one absence on March 26, 2019. The district court held that Jackson could not qualify for FMLA leave on either of those two dates because that would exceed the two days of monthly, intermittent medical leave for which he was certified (March 1, 2019, and another date, March 6, 2019, which is uncontested). As a result, according to the district court, Jackson could not make any interference claim for FMLA leave. On appeal Jackson argues that a medical certificate's estimation does not create a limit or cap on total days allowed monthly for FMLA leave. The district court found this argument to be forfeited because it was ostensibly presented for the first time only in Jackson's motion for reconsideration. USPS too spends a considerable portion of its brief arguing that Jackson's argument on this point is forfeited. We disagree with the district court and hold (1) that Jackson did not forfeit this argument and (2) that an estimated number of days of intermittent FMLA leave on a medical certification from does not operate as an exact limit of eligible days of leave an employee can take. Having so ruled, we remand the issue concerning whether Jackson gave proper notice as to his March 11, 2019, and March 26, 2019, absences to the district court to consider in light of the fact that Jackson was not limited to two days of FMLA leave a month.

a.

Although sparsely briefed in the district court, Jackson did not forfeit his argument that his medical certification did not limit him to only two days of intermittent FMLA leave a month. USPS first advanced the argument that Jackson was limited to just two days of FMLA leave per month in its motion for summary judgment in the district court. In so doing, USPS noted that the nurse practitioner certified Jackson for two days of intermittent leave per month and then briefly later argued in two short paragraphs in its motion that Jackson was not entitled to leave on March 11 or 26 because he had already exhausted his approved leave days by then. USPS's arguments

on this point were solely factual claims with no legal citations.  In response, Jackson's motion in opposition argued in one sentence in the statement of facts that, despite the medical certification of two days, "he had been allowed to take more than that in practice prior to Ms. Fields-Daniels becoming his supervisor."  DE 47, Pl. Resp. to Def. Mot. for Summ. J., Page ID 791.  This issue also briefly came up at oral argument before the district court on the motion for summary judgment.  The district court stated in its ultimate order that, during oral argument, Jackson did not argue or contest USPS's contention that his FMLA leave was limited to two days a month.  We disagree.  When the district court asked if Jackson was limited to two days of FMLA leave per month, Jackson's counsel responded that "we're not in agreement that [Jackson] would be limited to two days[.]"  DE 59, Hearing TR., Page ID 1774.  While it is true that Jackson did not make a legal argument with citation and merely made a factual denial, the same goes for USPS, which also did not make a legal argument and merely made a factual claim.  Yet the district court, nonetheless, deemed Jackson's argument on this point forfeited.

We review the district court's legal conclusion that Jackson's argument was forfeited de novo.  *United States v. Huntington Nat. Bank*, 574 F.3d 329, 331 (6th Cir. 2009).

"Generally, at the summary judgment stage, the non-moving party can forfeit an argument if they fail to respond to the moving party's arguments."  *Palma v. Johns*, 27 F.4th 419, 429 n.1 (6th Cir. 2022) (emphasis removed).  On the record before us, Jackson did not fail to respond to USPS's arguments.  USPS argued that Jackson's medical certification meant he was limited to two days of FMLA leave a month and, in response, Jackson denied that to be the case.  Neither party supported its argument with legal citation, and Jackson's response to USPS's argument cannot be termed a forfeiture.  At the very least Jackson provided a "minimal argument" on this issue, and that is enough to deem the issue not forfeited when compared to the minimal argument that USPS provided.  *Bennett v. Hurley Med. Ctr.*, 86 F.4th 314, 324 (6th Cir. 2023).  Therefore, the district court erred when it deemed Jackson to have forfeited this argument.

b.

Considering Jackson's argument and common sense, a medical certification form providing an estimate for intermittent *unforeseeable* leave cannot create an exact limitation of the total amount of FMLA days an employee can take. Jackson was certified for two days of intermittent leave a month. Intermittent leave, by its nature, can be foreseeable or unforeseeable depending on the condition. *See Render*, 53 F. 4th at 925. Here, Jackson's condition involved random and unpredictable flareups. Therefore, we think his condition to require intermittent *unforeseeable* leave for which a hard cap cannot be provided. Jackson's condition is different from someone who may get a medical certification for intermittent *foreseeable* leave. In that case—where the leave is *foreseeable*—then a medical certificate could potentially limit the number of leave days an employee might require. This is not such a case.

The FMLA entitles an eligible employee to a total of 12 workweeks of leave during a 12-month period for qualifying conditions. *Kinds v. Ohio Bell Tel. Co.*, 724 F.3d 648, 652 (6th Cir. 2013). The FMLA also allows an employer to request that an employee "submit a medical certification form" in support of his FMLA leave. *Frazier v. Honda of Am. Mfg., Inc.*, 431 F.3d 563, 566 (6th Cir. 2005); *see also* 29 U.S.C. § 2613. The parties do not dispute whether the medical certification provided by Jackson for two days of intermittent leave a month was valid. Instead, the dispute concerns whether this medical certification created an exact cap or limit on his monthly intermittent leave. Jackson's medical certification was a simple standardized form. It asked, "[w]ill the employee require intermittent leave or a reduced work schedule due either to planned medical treatment (for example, follow-up visits or physical therapy), or because of unforeseeable episodes of incapacity (for example, flare ups of symptoms)?" DE 46-13, Certification Form, Page ID 388. The medical professional filling out the form checked a box labeled "Yes" next to this sentence. *Id.* A bit below that box, the form asks for the "[f]requency of treatment/episodes of incapacity[.]" *Id.* Next to that sentence, the medical professional wrote "2 times per 1 month[.]" *Id.*

The nature of unpredictable symptoms tends to result in a medical certification that cannot give a clear number of days an employee would need off monthly. *See, e.g.*, *Graham v. BlueShield of Tenn., Inc.*, 521 F. App'x 419, 421 (6th Cir. 2013) (noting that the certifying

physician "stated that he could not 'give a clear frequency or duration [for her absences] at this time.'" (alteration in original)). Often the medical certification will merely serve as a confirmation that a plaintiff will need to be absent from work intermittently without even necessarily attempting to provide a precise estimate of how many days a month that would be.[7] *See, e.g.*, *Davis v. Mich. Bell Tel. Co.*, 543 F.3d 345, 347–48 (6th Cir. 2008) (medical certification forms merely stated employee may need to take FMLA leave for depression). Until now, this court has not decided whether a medical certification, which explicitly states a specific number of days monthly for intermittent unforeseeable leave, operates as a barrier for any more additional days of FMLA leave.

We conclude that in this context, given the unpredictable nature of sickle cell symptoms, the listed number of days is merely an approximation or estimate. Having received such an estimate, the employer can then structure its business arrangements accordingly. *See Graham*, 521 F. App'x at 423. As Jackson notes, the law clearly contemplates an estimate and not a hard bar. For instance, the federal regulations interpret the FMLA as setting out that an "estimate of the frequency and duration of the episodes of incapacity" is sufficient for a medical certification. 29 C.F.R. § 825.306(a)(7). An estimate, as the Seventh Circuit has held, is just that: an estimate. *See Hansen v. Fincantieri Marine Grp., LLC*, 763 F.3d 832, 840–45 (7th Cir. 2014). FMLA unforeseeable leave is *not* limited to the estimated number of days in the medical certification. *Id.* 841. Put simply, FMLA certification is not about establishing a hard cap, but rather it is about providing notice to employers of how unavailable their employee will be. Jackson is right when he claims that, if USPS believed he was exceeding his estimated number of unforeseeable leave days under the FMLA, it had the ability and responsibility to ask for recertification. *See, e.g.*, *Evans v. Coop. Response Ctr., Inc.*, 996 F.3d 539, 550 (8th Cir. 2021) (example of employer asking for recertification when employee exceeds FMLA leave in medical certification).

Further strengthening this point are the actual provisions in the FMLA's regulations on an employer's request for medical recertification. The regulations state that an employer may

---

[7]This would also be in contrast to a medical certification that states the employee is *not* entitled to FMLA leave, which we have referred to as a "negative certification" and which entitles the employer to deny FMLA leave. *See generally Verkade v. United States Postal Serv.*, 378 F. App'x 567, 574 (6th Cir. 2010).

request recertification if the "[c]ircumstances described by the previous certification have changed significantly[.]" 29 C.F.R. § 825.308(c)(2).  One such circumstance given as an example in the regulations is if the "medical certification stated that an employee would need leave for one to two days when the employee suffered a migraine headache and the employee's absences for his or her last two migraines lasted four days each[.]" *Id.*  In this situation, an employer can ask for recertification. *Id.*  This regulation, explicitly, envisions a scenario where an employee takes unforeseeable intermittent leave *beyond* their medical certification.  The burden of how to handle an incorrect or out-of-date estimate, throughout all this, is on the employer.  For instance, we have held that, if an employer is unhappy with a medical certification and finds it incomplete, it must so inform the employee and provide them with the opportunity to cure the deficiency. *See Sorrell v. Rinker Materials Corp.*, 395 F.3d 332, 337 (6th Cir. 2005); *see also Walters v. Pride Ambulance Co.*, 683 F. Supp. 2d 580, 593 (W.D. Mich. 2010) ("When an employer finds the FMLA certification form incomplete or inadequate, the employer has a duty to inform the employee of the deficiency and provide the employee with a reasonable opportunity to cure the deficiency." (citing *Novak v. MetroHealth Med. Ctr.*, 503 F.3d 572, 579 (6th Cir. 2007))).

One could argue that Jackson's case could be a little different because technically his medical certification is limited to two days a month, which is different than a medical certification that states something such as "about one to two days a month."  But consider again the regulation outlined above. *See* 29 C.F.R. § 825.308(c)(2).  That regulation states "one to two days" of intermittent leave and yet still envisioned a scenario where an employee had taken four days off under the FMLA. *Id.*  The nature of conditions involving unforeseeable intermittent leave means that a medical certification will almost always have to be an estimate. *Cf. United States v. Fitzgerald*, 906 F.3d 437, 447 (6th Cir. 2018) ("[C]ourts should not construe a statute to 'produce an absurd result that we are confident Congress did not intend[.]'" (quoting *United States v. Underhill*, 813 F.2d 105, 112 (6th Cir. 1987))).

Our holding today clarifies a significant confusion previously left unaddressed: how "district courts should consider requests for leave under the FMLA under circumstances where the amount of leave requested by the employee is inconsistent with the duration of incapacity

estimated on a medical certification form." *Cooper v. Perfect Equipment, Inc.*, No. 3:13-cv-1023, 2015 WL 1097344, at *9 n.6 (M.D. Tenn. Mar. 11, 2015). One case, cited by defendants, *Taylor-Haywood v. Henry Ford Health System*, exemplifies the importance of our decision today. No. 22-CV-10044, 2023 WL 2267152 (E.D. Mich. Feb. 28, 2023). In *Taylor-Haywood*, the district court did not consider whether the intermittent leave in question was foreseeable or unforeseeable. Instead, the district court merely held that the medical certification form can constitute a hard cap on the number of qualifying FMLA leave days. *Id.* at *5. In reality, if the nature of the condition is unpredictable, then the intermittent leave is unforeseeable, and a medical certification estimate does not cap the number of FMLA days. So just like the decision of the district court in this case, the decision of the district court in *Taylor-Haywood* was in error.

A medical certification could perhaps create a cap on the number of days of FMLA leave if the intermittent leave was *foreseeable*. For example, in our unpublished decision *Culpepper v. BlueCross BlueShield of Tennessee, Inc.*, we held that plaintiff's medical certification, which was for a set six days, created a hard limit on the number of days off she could take under the FMLA. 321 F. App'x 491, 496 (6th Cir. 2009) ("[Plaintiff] received exactly what her doctor ordered—six days of FMLA leave. No additional leave was authorized by the Certification, and [Plaintiff] has not shown that the five absences at issue were taken for one of the reasons enumerated in the FMLA."). The distinction between the plaintiff in *Culpepper* and Jackson is that the plaintiff in *Culpepper* was asking for "foreseeable medical treatment[.]" *Id.* In *Culpepper*, the plaintiff was medically certified to undergo in vitro fertilization which required a series of tests that constituted "two separate three-day periods of intermittent leave, for a total of six days of leave, during the designated treatment period from February 8 to March 10, 2006." *Id.* at 493. This was a set, consistent, predictable, and *foreseeable* number of days. On the other hand, Jackson was certified for two days a month, indefinitely, for an unpredictable, *unforeseeable* recurrence of his illness. That distinction is crucial, and district courts must first find that the intermittent leave is foreseeable before they determine that a particular number on a medical certificate creates an exact cap or limit. *Cf. Render*, 53 F.4th at 925–26 (discussing the distinction between unforeseeable and foreseeable leave).

We also note that a medical certification estimate for unforeseeable intermittent leave is not completely without effect. For instance, consider our decision in *Graham*. 521 F. App'x at 419. There, we noted that just because a medical certification cannot precisely pinpoint the number of days of leave does not mean that the employee can "take leave in whatever increment he or she chooses" because that would not, pursuant to the FMLA, "properly balance the employee's interests with those of the employer." *Id.* at 423. In *Graham*, though, the employee took twenty-eight days straight of FMLA leave, effectively undercutting any notice provided by the medical certification. *Id.* at 421. Jackson, on the other hand, merely asked for an additional few days beyond the two-day *estimate*, which presents a significantly different situation. Thus, Jackson has not exceeded the estimate in the same way.

We conclude with a final note. The record indicates that sickle cell anemia symptoms are unpredictable and sporadic. In view of this context, a medical professional's listing of a number of affected days a month cannot be seen as creating an exact cap or limit on FMLA leave. The limits on FMLA leave are set in the statute, and the medical professional's listing of a number of days per month amounts to no more than an educated approximation. In addition, a court's acceptance of a medical professional's estimate as a limit on a statutory right is inappropriate. USPS has not undertaken, as a factual inquiry, an examination of whether Jackson in fact had medical issues associated with sickle cell on the days he was absent. This is despite the clear fact that Jackson had FMLA leave available under the terms of statute.

c.

Because the district court erred in holding that Jackson's medical certification categorically barred him from taking FMLA leave on March 11, 2019, and March 26, 2019, we reverse the district court's decision and remand for consideration whether there was a genuine issue of material fact as to whether Jackson gave notice as soon as practicable for his FMLA leave on either day. Such a genuine issue would make summary judgment improper. As this consideration was not taken before, and because it involves potential issues of fact on summary judgment, we think it best that the district court decide the sufficiency of notice in the first instance. *See, e.g.*, *Bay Milles Indian Cmty. v. Whitmer*, 794 F. App'x 485, 487 (6th Cir. 2019).

4.

Finally, we come to Jackson's FMLA interference claim with respect to his firing under the LCA. According to Jackson, his firing for violating the LCA constituted "interference" because it was effected by counting days covered under the FMLA as unexcused absences or AWOL. If Jackson can sufficiently present his prima facie case, the burden shifts to USPS to provide a "legitimate, non-discriminatory reason for its actions." *Demyanovich v. Cadon Plating & Coating, LLC*, 747 F.3d 419, 427 (6th Cir. 2014). If the employer does, then the burden shifts back to Jackson to rebut the employer's "proffered reasons." *Id.* Violation of the LCA would constitute a legitimate, non-discriminatory reason for firing Jackson. *See Hixon v. Tenn. Valley Auth. Bd. of Dirs.*, 504 F. Supp. 3d 851, 872 (E.D. Tenn. 2020) ("[V]iolation of a last chance agreement is a valid reason to discharge an individual."); *see also Hooker v. City of Toledo*, 644 F. App'x 675, 678 (6th Cir. 2016). Jackson claims that this reason cannot be legitimate because there is a factual dispute whether he violated the LCA. As of right now—before the court considers the remaining days on remand—this is true. Jackson conceded taking unexcused absences on February 27, 2019, and March 8, 2019. As articulated above, we also hold that there is no genuine issue of material fact that Jackson also had an unexcused absence on December 26, 2018. That results in three unexcused absences. But Jackson's LCA required four unexcused absences or one AWOL for termination. If, upon remand, the district court concludes that there is no genuine dispute of material fact as to one more unexcused absence or AWOL it should hold that Jackson's FMLA interference claim for his firing cannot survive summary judgment. At this point, however, we vacate the district court's decision finding that Jackson failed to make out a prima facie case that his firing interfered with his rights under the FMLA.**8**

---

**8**As an alternative argument, Jackson claims that the decision to fire him under the LCA was pretextual and points to alleged discriminatory conduct of Fields-Daniels. The record does show that Fields-Daniels was extremely strict with Jackson—even before his LCA. But strictness in following procedure is not an FMLA violation, especially during the time frame that Jackson was on his LCA for his poor performance; the LCA was only "offered by the grace of [his] employer." *Norden v. Samper*, 503 F. Supp. 2d 130, 161 (D.D.C. 2007). Counter to what Jackson claims, Fields-Daniels did not contact HR through email "to explore ways to retaliate against [him] for his use of FMLA" as soon as she became his supervisor. CA6, R.14-1, Appellant Br. at 50 (citing DE 47-22, Fields Daniels May 13, 2017, Email, Page ID 1288). Instead, the "smoking gun" email Jackson cites is merely a message from Fields-Daniel to USPS HR asking about the parameters of Jackson's medical certification. In another instance, Jackson complains that Fields-Daniels began unfairly scrutinizing him by keeping a log of his behavior beginning in November 2018. But of course, there is nothing unusual about that timing at all, given that November 2018 is just a

B.

As noted earlier, there are two "distinct theories of wrongdoing under the FMLA." *Bryson,* 498 F.3d at 570. We have discussed FMLA interference so far, but Jackson also brings a claim under a theory of FMLA retaliation. An employee can prove FMLA retaliation with direct or indirect evidence. *Demyanovich*, 747 F.3d at 432. To prove retaliation with direct evidence, Jackson would need evidence that his decision to take FMLA leave was at least a "motivating factor" in USPS's decision to fire him. *Id.* (quoting *Laderach v. U-Haul of Nw. Ohio*, 207 F.3d 825, 829 (6th Cir. 2000)). But Jackson can also attempt to prove retaliation indirectly using the *McDonnell Douglas* burden shifting framework. For Jackson to "establish a prima facie case of retaliation" he must show that "(1) he engaged in protected activity, (2) his employer was aware of the protected activity, (3) he was subject to an adverse employment action, and (4) there was a causal nexus between the protected activity and the adverse employment action." *Id.* 432–33. From what we understand from the briefs, Jackson is arguing FMLA retaliation with only indirect evidence.

We view Jackson's FMLA retaliation claim as alleging the following: Jackson was engaged in "protected activity," *Demyanovich*, 747 F.3d at 433, under the FMLA when he took leave on certain dates, yet USPS then terminated him for his absences, creating a casual nexus between the FMLA protected activity and the adverse employment action, *see id.* 432–33. Therefore, the burden under *McDonnell Douglas* now moves to USPS to provide a legitimate reason for his termination. *See Demyanovich*, 747 F.3d at 432–33. USPS claims it does have a valid legitimate reason: Jackson violated the LCA. The burden now upon Jackson's shoulders, Jackson claims that he has presented evidence that he did not violate the LCA. So, like his FMLA interference claim with respect to his LCA, Jackson's retaliation claim comes down to whether he had four unexcused absences or one AWOL. Because, as discussed earlier, the number of FMLA protected absences (and thus, whether Jackson violated his LCA) is not clear

---

few days after Jackson was put on his LCA in late October of 2018. It is true that Fields-Daniels was frequently overeager to deny FMLA leave. But it is also true that if Jackson did violate his LCA and was terminated, that violation would not be a pretext for his firing—his firing would merely be the natural consequence of violating his LCA.

at present, we vacate the district court's decision on Jackson's FMLA retaliation claim pending its consideration of his March 11, 2019, and March 26, 2019, claims.

C.

As an independent basis to affirm, USPS asks us to apply the "honest belief rule" to dismiss Jackson's FMLA interference and retaliation claims. "[U]nder this circuit's 'honest belief' rule, 'as long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect.'" *Allen v. Wal-Mart Stores, Inc.*, 602 F. App'x 617, 621 (6th Cir. 2015) (quoting *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001)); *see also Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 285–87 (6th Cir. 2012) (applying the "honest belief" rule to FMLA retaliation). According to the rule, an employer's "proffered reason is considered honestly held where the employer can establish it reasonably reli[ed] on particularized facts that were before it at the time the decision was made." *Cincinnati Bell Tel. Co.*, 681 F.3d at 285 (internal citation omitted). If that is established, the employee must then show that the belief was not honestly held. *Id.* Ultimate falsity of the employer's belief cannot create pretext as a matter of law. *Id.*

But, at least under the facts and argument presented to us on appeal, the honest belief rule does not apply because the rule's applicability depends upon potential factual inquiries as to whether Jackson gave sufficient notice to USPS to take his FMLA leave. If there is a genuine issue of material fact as to whether Jackson gave notice to his employer that he was taking FMLA leave, then there would also be a genuine issue of material fact as to whether USPS knew he qualified for FMLA leave on those dates. The "honest belief" rule is concerned with what the employer "honestly and reasonably believed." *Hixon v. Tenn. Valley Auth. Bd. of Directors*, 558 F. Supp. 3d 573, 582 (E.D. Tenn. 2021). Here, Jackson's entire argument goes to what USPS "honestly and reasonably believed"—i.e., Jackson argues he gave USPS notice, which they understood and nonetheless disregarded. If Jackson has created a fact issue on this point, then he has also created a fact issue as to what USPS actually "honestly and reasonably believed." As a result, Jackson's interference and retaliation claims are linked with the honest belief rule and that cannot be a separate basis for affirming.

IV.

Finally, Jackson claims that by denying him reasonable accommodations for his sickle cell anemia, USPS violated the Rehabilitation Act. *See generally* 29 U.S.C. § 701. The district court rejected Jackson's argument on this point, reasoning that he did not request any accommodations.[9] We affirm the district court on this issue.

"The Rehabilitation Act of 1973 prohibits discrimination and retaliation in employment against disabled persons by federal agencies." *Hiler v. Brown*, 177 F.3d 542, 545 (6th Cir. 1999). "Claims brought under the Rehabilitation Act are reviewed under the same standards that govern ADA claims." *Keith v. Cnty. of Oakland*, 703 F.3d 918, 923 (6th Cir. 2013). According to Jackson, USPS failed to make reasonable accommodations for his disability. But as the employee, Jackson has the burden of both asking for an accommodation and showing that it was reasonable. *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 202 (6th Cir. 2010).

Jackson presents no evidence that he requested an accommodation beyond the claim that he made use of the FMLA and that his employers knew of his disability. Despite a lack of evidence putting USPS on notice of a request for accommodations, Jackson still rightly notes that there is no exact science or requirement as to how an employee is to go about requesting an accommodation. In making this point, Jackson cites *Marble v. Tennessee*, where we stated that, "[i]n requesting accommodation, an employee 'need not use the magic words "accommodation" or even "disability."'" 767 F. App'x 647, 652 (6th Cir. 2019) (quoting *Leeds v. Potter*, 249 F. App'x 442, 449–50 (6th Cir. 2007) (citing *Smith v. Henderson*, 376 F.3d 529, 535 (6th Cir. 2004))). True enough, but a few sentences later in *Marble* itself we noted an earlier holding "that an employee making a request for leave under the Family Medical Leave Act did not trigger an employer's duty under the ADA because the employee was not requesting any particular accommodation from his employer." *Marble*, 767 F. App'x at 652 (citing *Mathis v. City of Red Bank*, 657 F. App'x 557, 563 (6th Cir. 2016)). This is not to say that a request for FMLA leave can *never* support a request for accommodation, but here—given the requirements

---

[9]USPS again tries to claim Jackson forfeited this argument. Again, USPS is wrong on the forfeiture issue. Jackson's complaint brought claims for violating the Rehabilitation Act. And then in response to USPS's motion for summary judgment, Jackson continued to reiterate that he had claims under the Rehabilitation Act.

of the ADA and the accommodation process—Jackson's mere request for FMLA leave cannot be interpreted as requesting accommodations for his disability from his employer. *See Jakubowski*, 627 F.3d at 202 ("If a disabled employee requires an accommodation, the employee is saddled with the burden of proposing an accommodation and proving that is reasonable."); *see also Mathis*, 657 F. App'x at 562–63 (noting that more specificity as to the requested accommodations are needed beyond just a simple FMLA request).

Simply put, there is no evidence presented by Jackson that he attempted to, or even hinted at, needing to make use of the accommodation process in the Rehabilitation Act.[10]  All Jackson did is ask for FMLA leave, which is in no way sufficiently specific. *See, e.g.*, *Waggel v. George Washington Univ.*, 957 F.3d 1364, 1372 (D.C. Cir. 2020) ("[A] request for a medical leave of absence standing alone [is] insufficient to make out a request for accommodation."); *Wright v. City of New York*, No. 23-CV-3149, 2024 WL 3952722, at *8 (S.D.N.Y. Aug. 27, 2024) ("[N]umerous courts have found, logically, that a request for leave under the FMLA does not constitute a request for a 'reasonable accommodation' under the ADA." (internal citations omitted)).  The dissent's position otherwise—that requests for the FMLA leave and nothing else can constitute a request for accommodations under the ADA—not only overlooks Jackson's burden of proof but also erroneously collapses two textually distinct statutes into one whole. *See Chandler v. Specialty Tires of Am. (Tenn.), Inc.*, 283 F.3d 818, 825 (6th Cir. 2002) (noting that while factual scenarios often encompass the FMLA and ADA simultaneously, "the legal entitlements that flow from these facts will differ").

Finally, Jackson directs us to a case in the Southern District of Ohio, *Schobert v. CSX Transportation Inc.*, 504 F. Supp. 3d 753 (S.D. Ohio 2020) which he claims supports his position that he provided sufficient notice for accommodations.  But *Schobert* is not precedential, and, regardless, is not relevant here.  In *Schobert*, the district court held that a request for FMLA leave can be an accommodation under the Rehabilitation Act for a *retaliation* claim. *Id.* at 785, 788–89.  In other words, a plaintiff making use of FMLA leave for his established accommodations

---

[10]In fact, the evidence in the record, if anything, would suggest that Jackson did not attempt to request accommodations given that his medical certification form—which he used to justify his FMLA leave—marked the box "Yes" in response to the question of if "the employee [is] able to perform the essential functions of the employee's position without physical restrictions, accommodations or modification of job duties?"  DE 46-13, Certification Form, Page ID 388.

can constitute a protected accommodation that employers cannot punish the employee for using under the Rehabilitation Act. But as the district court in Jackson's case rightly noted, *Schobert* had nothing to do with the notice requirement of the Rehabilitation Act. Instead that case had to do with the careful consideration of whether FMLA leave can be part of an established reasonable accommodation umbrella, which is an issue which—it is worth noting—this court is not deciding. *See Schobert*, 504 F. Supp. 3d at 786–87. The question in Jackson's case is if his request for FMLA leave, *by itself*, also constituted a request for reasonable accommodations. We hold that it does not.

V.

In summary, we rule as follows. We affirm the district court's holding that Jackson did not qualify for FMLA leave on December 26, 2019. We do not resolve Jackson's individual FMLA interference claim for his March 1, 2019, date, but because there was a genuine dispute as to material fact as to whether he qualified for FMLA leave on that date, it cannot be used to show a violation of his LCA for summary judgment purposes. We reverse the district court's ruling that Jackson's medical certification creates a hard cap on his unforeseeable intermittent medical leave and hold that it does not. We remand this case to the district court to consider whether Jackson has presented sufficient evidence to create a genuine issue of material fact as to whether he qualified for FMLA leave on March 11, 2019, and March 26, 2019. We vacate the district court's decision on FMLA interference and retaliation as it concerns the fact of whether Jackson violated his LCA. Finally, we affirm the district court's holding that USPS did not deny Jackson reasonable accommodations for his sickle cell anemia.

CONCURRENCE / DISSENT

KAREN NELSON MOORE, Circuit Judge, concurring in part and dissenting from Part IV. I concur with the majority opinion Parts I, II, and III. But because I would hold that Jackson's FMLA leave request was sufficient to put his employer on notice that he required an accommodation for his disability, and would therefore allow Jackson's Rehabilitation Act claim to proceed past summary judgment, I dissent from the majority opinion Part IV.

As the majority opinion sets forth, the Rehabilitation Act "prohibits discrimination and retaliation in employment against disabled persons by federal agencies." *Hiler v. Brown*, 177 F.3d 542, 545 (6th Cir. 1999). Jackson alleges that USPS discriminated against him by failing to allow him to take intermittent medical leave to accommodate his sickle cell anemia, as well as that USPS terminated him in retaliation for his protected conduct. "In order for a plaintiff to prevail on an allegation of handicap discrimination based on failure to accommodate, he must first establish a *prima facie* case by showing that: (1) he is [a disabled individual] as defined in 29 C.F.R. § 1614.203(a)[(2)]; (2) he is qualified for the position . . . ; (3) the agency was aware of his disability; (4) an accommodation was needed, i.e., a causal relationship existed between the disability and the request for accommodation; and (5) the agency failed to provide the necessary accommodation." *Gaines v. Runyon*, 107 F.3d 1171, 1175 (6th Cir. 1997). And to prevail on his retaliation claim, Jackson must make a showing of the aforementioned factors and demonstrate that "the defendant subsequently took an employment action adverse to [the] plaintiff or subjected the plaintiff to severe or pervasive retaliatory harassment" and that "there was a causal connection between the protected activity and the adverse employment action." *Hurtt v. Int'l Servs., Inc.*, 627 F. App'x 414, 422 (6th Cir. 2015). But "a covered entity is generally not liable for failing to make reasonable accommodation if the plaintiff did not request accommodation or otherwise alert the covered entity to the need for accommodation." *Marble v. Tennessee*, 767 F. App'x 647, 652 (6th Cir. 2019) (citing *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1046–47 (6th Cir. 1998)). Indeed, the relevant EEOC guidance provides that it is generally "the responsibility of the individual with a disability to inform the employer that an

accommodation is needed." 29 C.F.R. pt. 1630 App. § 1630.9. So, in order to succeed on either of his Rehabilitation Act claims, Jackson must show that he requested an accommodation in the first instance.

It is undisputed that Jackson did not make a formal verbal or written request to his supervisors for an accommodation. But "[i]n requesting an accommodation, an employee 'need not use the magic words 'accommodation' or even 'disability.''" *Marble*, 767 F. App'x at 652 (quoting *Smith v. Henderson*, 376 F.3d 529, 535 (6th Cir. 2004)). Instead, we may infer that an employee requested an accommodation if it is "clear from the context that [the request] is being made in order to conform with existing medical restrictions." *Leeds v. Potter*, 249 F. App'x 442, 449 (6th Cir. 2007). The relevant context here is that Jackson had made, and recently renewed, a request under the FMLA for intermittent leave to accommodate flare ups of his sickle cell anemia. The question before us, then, is whether Jackson's FMLA leave request was sufficient to put USPS on notice that he was also requesting an accommodation for his disability. The district court concluded that it was not, and the majority opinion follows suit. Maj. Op. at 21–23. I disagree.

It is settled law in this circuit that "a medical leave of absence can constitute a reasonable accommodation under appropriate circumstances." *Cehrs v. Ne. Ohio Alzheimer's Rsch. Ctr.*, 155 F.3d 775, 783 (6th Cir. 1998). Thus, when Jackson requested intermittent FMLA leave to accommodate his sickle cell anemia flare-ups, that request could have constituted a request for a reasonable accommodation. Indeed, we have held that an employee's request for FMLA leave, coupled with verbal requests for sleep accommodations and a doctor's note corroborating the employee's disability, constituted a "sufficient, good-faith request[] for accommodations." *Hurtt*, 627 F. App'x at 423. And we have held that an employee requested an accommodation by handing in an FMLA form that described the employee's condition, alongside a doctor's note corroborating the employee's need for protective clothing, and that his employer was therefore on "notice of the need for an accommodation." *Mathis v. City of Red Bank*, 657 F. App'x 557, 563 (6th Cir. 2016); *see also Schobert v. CSX Transp. Inc.*, 504 F. Supp. 3d 753, 787–90 (S.D. Ohio 2020) (holding that two plaintiff employees—one with a chronic spine injury and another with chronic knee pain—requested reasonable accommodations with they requested FMLA leave

to address their ongoing disabilities).**1**    Here, Jackson provided USPS with an FMLA certification form describing his disability as a chronic, lifetime disease and containing an attestation from a healthcare professional that Jackson would need to take frequent intermittent leave to accommodate his sickle cell flare-ups.  R. 46-13 (Certification Form) (Page ID #387–88).  This form was sufficient to place USPS on notice that Jackson had a disability and that he needed intermittent medical leave to accommodate that disability.  Jackson's FMLA request should therefore be considered a request for an accommodation.**2**

In coming to the opposite conclusion, the majority opinion contends that Jackson's FMLA leave request was "in no way sufficiently specific" to alert USPS that he was requesting an accommodation for his disability.  Maj. Op. at 22.  But Jackson's FMLA leave form requested the exact accommodation that he now alleges USPS denied him.  In other words, Jackson's requested accommodation was the very same accommodation that the FMLA provides: intermittent medical leave.  That the accommodation Jackson needed for his disability mirrored the accommodation provided to him under the FMLA distinguishes this case from others in which we have found that a request for FMLA leave does not, on its own, apprise an employer of an employee's request for an accommodation.  *See Mathis*, 657 F. App'x at 563 (holding that an employee's initial FMLA certification, which did not contain a request for accommodations for the employee's lupus (namely, indoor work and protective clothing) but instead indicated the employee's intent to take indefinite leave, did not constitute a request for an accommodation).  Here, USPS was on notice that Jackson needed an accommodation—i.e., to take intermittent

---

**1**The majority opinion contends that *Schobert* is inapposite because the district court addressed only whether "a request for FMLA leave can be an accommodation under the Rehabilitation Act for a *retaliation* claim."  Maj. Op. at 22  (emphasis in original).  But Jackson brings a retaliation claim under the Rehabilitation Act alongside his failure-to-accommodate claim.  R. 40 (Am. Complaint at 13–14) (Page ID #227–27).  In any event, the *Schobert* court's analysis as to whether an FMLA request can constitute an accommodation request under the Rehabilitation Act is relevant to Jackson's failure-to-accommodate claim because both types of claims—discrimination and retaliation—require that an employer be on notice of an employee's request for an accommodation.

**2**The majority contends that, in concluding that Jackson's FMLA leave request was sufficient to notify USPS of his need for an accommodation, this dissent both "overlooks Jackson's burden of proof" and "erroneously collapses two textually distinct statutes into one whole."  Maj. Op. at 22.  As to the former, I acknowledge that it is Jackson's burden to demonstrate that he requested an accommodation; I merely disagree with the majority's conclusion that Jackson has not met this burden.  As to the latter, as the majority itself notes, "[c]laims brought under the Rehabilitation Act are reviewed under the same standards that govern ADA claims."  Maj. Op. at 21 (quoting *Keith v. County of Oakland*, 703 F.3d 918, 923 (6th Cir. 2013)).

medical leave—for his disability because he requested FMLA leave to accomplish that same purpose.

This analysis leads me to the conclusion that Jackson's FMLA leave request constituted a request for an accommodation under the Rehabilitation Act. And because Jackson requested an accommodation, I would proceed to evaluate whether Jackson has established a prima facie case of discrimination or retaliation under the Rehabilitation Act. There seems to be little dispute that Jackson's sickle cell anemia is a qualifying disability; that, apart from having to take intermittent medical leave to accommodate his disability, he was otherwise qualified for his position as a Post Office clerk; that USPS knew of Jackson's disability; that intermittent leave was needed specifically to accommodate Jackson's sickle cell flare-ups; and that USPS failed to provide Jackson the requested accommodation denying him leave. *Gaines*, 107 F.3d at 1175. Nor do the parties appear to dispute that Jackson's termination was an adverse employment action and that there was a causal connection between his requests for leave and his termination. *Hurtt*, 627 F. App'x at 422. Viewing the facts and drawing all inferences in the light most favorable to Jackson, as we must, I would therefore conclude that Jackson has established a prima facie case of both discrimination and retaliation under the Rehabilitation Act.

In sum, I join the majority opinion Parts I, II, and III. But because I believe that Jackson's FMLA leave request was sufficient to apprise USPS of his need for an accommodation for his disability, I cannot agree with the majority opinion Part IV. I therefore respectfully dissent from Part IV.

---

**CONCURRENCE / DISSENT**

---

MURPHY, Circuit Judge, concurring in part and concurring in the judgment. I join all of Judge Gibbons's comprehensive opinion for the court but Part III.A.3.b. There, my colleagues hold that the leave listed in a medical certification cannot restrict the amount of unforeseeable leave that an employee can take under the Family Medical Leave Act. They may well be right. But I would leave this issue for the district court on remand. That court resolved the issue only on a forfeiture ground—without discussing the legal merits. And the U.S. Postal Service's brief defends the judgment based only on the forfeiture ground—not based on the legal merits. So we must resolve this issue with no reasoned analysis on the other side. Instead of taking that approach, I would simply conclude that the district court wrongly found the issue forfeited. And I would add this legal issue to the list of issues that we have told the district court to consider on remand. I thus concur in the judgment in this respect. But I otherwise concur in the remainder of the opinion.